Our next and final case this morning is number 22-16729, Mayes v. Arizona Attorneys for Criminal Justice. Mr. Samuels. Good morning, your honors, and may it please the court. My name is Alexander Samuels. I'm here with my colleague, Ashley Levine, on behalf of Arizona Attorney General Mayes. I'm going to try to save about five minutes for rebuttal, but I recognize it'll probably be my job to watch the clock. To try to help focus some of the arguments here in this case, I want to talk briefly from our perspective about what this case is not about and what this case is about. This case is not about a defendant's right to counsel or other concerns that might otherwise be rooted in the Sixth Amendment. In fact, it's not about any right of criminal defendants at all, including their First Amendment rights. Even in enjoining the statute below, the district court enjoined the law only as applied to defense attorneys and their agents, not as applied to defendants themselves. This case is also not about Arizona Rule of Criminal Procedure 39, which restricts much of the same conduct that this statute restricts. AACJ has not challenged that rule in this litigation. Can I ask a question about that? We previously found that there was stamping, despite the failure to challenge that rule, because there was a difference between the two rules. Does that mean that this case can only be about issues within that difference? In other words, are we limited by the standing ruling to a narrow range of the coverage of the statutory rule? I don't think you are, Your Honor. I do think the district court looked at the entire coverage of the statute. Well, you may have, but it may have been wrong. We have not taken the position, and I'm not taking the position here, that the district court was wrong to look beyond the, you know, if you're sort of slicing up the Venn diagram, only the one portion over here that's not covered by the rule. I'll confess that I think even if the court's analysis was restricted to victim contact that was not covered by the rule, I'm not sure it would impact the analysis in this case significantly, but ultimately, we believe the district court was right to look at the whole statute. Let me try to focus on, if you would, and this may not be a First Amendment problem, but I want to focus on what the statute forbids and the differing treatment it gives people. The statute says that if defense counsel wants to contact a victim, must first notify the victim, who can then decide whether or not to consent to the contact or not. That's the fair description of the statute? Yes. The statute doesn't necessarily require a lot of those specifics, but that's how it plays out. That's how it plays out. Yes. A prosecutor who wants to talk to the victim need not go through those procedural steps, correct? That's correct, Your Honor. Must the prosecutor, and I'm assuming that the victim still must consent to speak to the prosecutor in some sense? The victim has the right to say to the prosecutor, I just don't want to talk to you? I think that's certainly right. I can't find an Arizona case that says it, but I also can't find an Arizona case that says no, you're obligated to talk to the prosecutor. I think under the ordinary principles that in order for an attorney in a case to talk to anyone, generally that person is going to have to consent to contact. So what we have here is a disparate treatment of defense counsel and prosecutors. Prosecutor doesn't have to go through the victim's advocate to get the consent. That prosecutor can go directly to the victim to get the consent. Seems unfair. The statute was written by prosecutors, so I understand. But does that, I'm trying to figure out where that, if anywhere, that comes into our First Well, I think it might help in answering that question to separate out sort of several stops on the First Amendment analysis here, because I do think there are several questions that need to be resolved along the way. The first is, is this a regulation of conduct or is this a regulation of speech? Our position is obviously, as detailed in the briefs, that this is really a regulation of professional conduct. And what does the professional add to that anymore after NIFLA? So I think NIFLA undoubtedly says that professional speech as a category cannot be treated differently. NIFLA does, however, talk about how there are a couple categories that are treated differently and conduct is treated differently. And so I think it leaves intact any holdings of this court about conduct, and I think this court observed that intangibly. Does it matter that it's professional conduct, though? That's the question, I guess, I thought Judge Johnstone was asking. So, for example, let's assume this statute prevented defendants from contacting victims. Would it pose First Amendment problems? Or would it merely just regulate, in your view, conduct, as opposed to professional conduct? The statute does in fact regulate defendants, but I do think the analysis is maybe a little bit different for defense counsel versus defendants. What I would say is certainly conduct is going to be looked at differently under the First Amendment regardless of whether it's professional conduct or not. But I do think the professional nature of the conduct here and the nature of defense counsel's relationship or desire to speak with the victim in the first place, it does matter. I think it matters somewhat significantly. The statute as such, which regulates contact, maybe that's conduct. But as it's played out, there are these form letters that are sent. In other words, you could administer the statute as written, as I understand it, by having the attorney for the defendant give the prosecutor a letter or requesting an interview and then to the victim. There is a subsection in the statute that would not require the prosecutor to pass the letter on to the victim, but I think they have the discretion to do so. Right. So you could administer it that way and you'd have a lot less problems, it seems to me. The problem is that, because then you could say, well, this is just context, it's a question of how it's getting there. But what you're actually doing is sending a letter that is in the voice of the attorney general, but it appears to be, at least some of the letters certainly seem to be dissuading the victim from acceding to this interview, not simply passing on a request. So it starts to kind of morph in terms of whether you're just regulating the question of who's making the contact, and it's contact, instead you're changing the contact. I don't think that's necessary. I mean, certainly it plays out differently in the sense that the victim is the recipient of the letter, rather than in the absence of the statute, the victim might have a defense attorney show up on their doorstep and immediately have contact with them. Right. Okay. So a rule that says you can't go to the doorstep, you have to write a letter, for example. That would be a different statute with a different impact. Isn't that what the statute says, effectively? It doesn't say you have to write a letter, but you can't initiate contact directly. That's right. It prohibits defense counsel from making direct contact. It requires the prosecutor to notify the victim of the defense attorney's desire to speak with them. But what's actually happening is that they are writing a letter that says considerably more than that, and is certainly fairly viewed often as just a waste of a letter. Well I think what the letters do, and there's a few of them in the record, including the one from the Attorney General's office, is they quite clearly advise the victim of their right to decline to be interviewed by defense counsel. Not only do you have no right, but you absolutely have no obligation. And you can terminate the interview whenever you want, and you can have the Attorney General there, the prosecutor there, and so on. Yeah, I think I would push back, Judge Berzon, on the idea that that is necessarily going to dissuade victims. I mean, I think those plainly are the victim's rights under the Arizona Constitution and under Arizona statute. And why doesn't the statute require the prosecutor to do it? Well, I think the prosecutor does pretty clearly have to advise victims of all of the their rights. I think that is one obligation imposed on prosecutors. Are you using this letter? They do that separately. Well, so they generally do that early in the case with a general advisement of all their rights, yes. So why isn't it good enough at that point? I'm sorry, I didn't hear your question. So by repeating it all, it seems pretty plain that they're trying to dissuade from going forward with the interview. Well, I think the statute serves another goal, which is it provides the victim an opportunity to be concurrently notified of their rights, not just have received a letter many months ago, perhaps, about their general rights, and to make an informed decision on their own time being concurrently informed of those rights. I have a question. The statute does not have a similar rule about the media, is that right? That's correct, Your Honor. Suppose it did. Would that be valid? I think that would be a much more difficult case. Why? I think regulating media contact is going to implicate, obviously, a number of other interests on the other side of the spectrum, but I think also if you look at the difference between regulating defense counsel contact and media contact, this is where, in part, we think the district court just got it wrong and did clearly err in one way. In failing to evaluate how defense counsel contact could be uniquely harmful, and it's not to say it will be uniquely harmful in every single case, we think it's really more of a matter of risk, and that defense counsel contact... I mean, you actually think that the defense counsel is going to upset people more than the media? Is that they come in knocking on the door and want to talk to people? And more than that, is there anything in the records that suggests that? I think there is, and I think it actually comes from AACJ's own expert. Their own expert testified that contact with defense counsel they are particularly careful about, and the testimony was in the context of homicides, said that contact with agents of the defendant might be particularly risky because the victim who is having this contact will associate those people with the defendant who did serious harm to their family member. And so there, I think, is that testimony in addition to testimony from representatives of the Attorney General's office. But the defense counsel are subject to rules of professional responsibility that don't apply to the media, so I guess we're trying to figure out what's the value added here of running the defense counsel through the prosecution for these contacts? And is any of that value added something that is neutral as to both the prosecution and the defense? Well, I do think the victim is served well by having a single point of contact and the predictability of having that single point of contact. Well, that may be true, but again, this is an odd choice of single point of contact. I mean, if, for example, you had a rule that said there was a victim's advocate person and that all contacts, prosecutors and defendants, would go through that person, I think you would have very little problem. But to have the adversary lawyer be the person that the contact is going through is a very strange rule. I take the point. I do think on the flip side of that, though, there is a unique benefit in having the prosecutor's be the single point of contact, which is the prosecutor is obligated by law to clearly notify the victim of their rights, and so I think that helps serve some of the functions of the statute. Getting back to the media point, I also think that differentiating between defense counsel and media, there is another big difference, which is that in the context of ongoing legal proceedings, which is the only time that this statute applies, that courts frequently hold that the participants in the legal proceedings can be regulated in very different ways than non-predictable. A lot of the district courts' hypotheticals and pointing to the record and also the plaintiffs have to do with things that the attorneys or the defense team want to say to the victims that isn't necessarily directly related to the case or isn't investigatory, isn't perhaps representational. Could we construe the statute so as to apply only to attorney interviews or investigator interviews that relate directly to the case itself and not to other kinds of speech? I think you might be able to construe it that way. There is one Arizona State case that gets towards this a little bit, and that's the Champlin case that's cited in the briefs. That's a case where the victims who were involved were victims of the defendant's conduct in one case, but were witnesses and not victims to a defendant's conduct in another case. And the Arizona Supreme Court in that case held that the victims could be compelled to have depositions or interviews taken in the case where they were not victims, despite 1340-4433 being out there and existing. Plainly the purpose of 1340-433 relates directly to ongoing proceedings. It doesn't apply at all until charges are brought. It doesn't apply to defense attorneys on the whole. As I understand it, one of the fears of the plaintiffs here is if they're going around and soliciting votes generally and they knock on the door of somebody who happens to be a victim and talk to them, then they are violating the statute. And is your understanding that that's not the case? Yeah, I mean, the Attorney General's position is that inadvertent contact, for example... Well, it's not inadvertent. They know it's the victim, but what they want to do is tell them to vote for X. Yeah, and the Attorney General's position is that that is not necessarily covered by the statute, that the statute is really concerned with the attorney's role in the ongoing legal proceedings. And this is a facial attack. It is, Your Honor, yes. So there's no contention in this case that anybody has ever been disciplined or face disciplined because they went door-to-door to solicit votes. Certainly none that I'm aware of, Your Honor. And I guess if I were speaking for the other side, I'd say that would be a pretty hollow victory for them if they were to win the case on that basis. Because they want the whole statute to be gone. They don't want something that says, yeah, we can go door-to-door to solicit votes, but we can't contact them at all about the case. Understood. But I mean, I think the core point here of the statute really being aimed at the ongoing legal proceedings and the defense attorneys in their professional role is an important one. So you think about a lot of what defense attorneys want to do is actually collecting information rather than delivering it. But even in the small portion of this that we're talking about where they want to deliver information, at the trial there was raised the question of capital cases where a defense attorney might want to advocate to the victim or member of the victim's family as to why they might not want to support the death penalty. Undoubtedly, I could see why defense counsel wants to do that, but it's in their professional capacity. They want to do that because it's in their client's interest and their client wants them to do it. If defense counsel in their own head thought that they were actually very much for the death penalty as a policy matter, and maybe they thought their client was guilty of a crime so heinous that they should be executed, it wouldn't matter. They're not there to speak their mind. So we've got Gentile, which you've suggested, although the further we get from this representational standpoint, the more we get outside of the lowered standard of Gentile. And then we have NIFLA, which says that lawyers, professional speech at least, is just ordinarily protected under the First Amendment. So with regard to the sphere of speech that's been stipulated to be involved here, and there's some questions on the edges, trying to figure out, I guess, first of all, it's a preliminary question. I mean, why isn't this a burden on the defense that the prosecution doesn't have, and why isn't that at least an incidental burden on speech? Well, again, I want to separate out a little bit. So first on the conduct versus speech question, there can be incidental burdens on speech, and still we might have this be conduct, but I want to also get to some of the other parts of your question. So let me assume for a second that you disagree with me there and that this is speech. If it is speech, we do think Gentile provides the right test despite NIFLA. NIFLA does not say anything at all that indicates that it's trying to change the law. It definitely says that professional speech as a wholesale category should not be treated as some special category. But it does not purport to be overturning anything or changing the law in any significant way. And Gentile's been around for decades at this point. And as a matter of fact, I took a look on Westlaw. It's been cited a few times since the reply brief in this case was filed, including in the Trump prosecution in the D.C. circuit. And what's your understanding of the scope of Gentile? So Gentile provides several factors to consider, and candidly, one of them is one of the ones that you've pointed out here, which is that this law only applies to one side out of the two sides in the criminal case. That's a factor. And it's a factor that weighs in favor of my friends here. I certainly can't get away from that. But there are multiple factors in the Gentile analysis. And so I think the court's job under that case is to look at all those factors and balance them and not to give too much weight to any one factor over the others. But if we conclude that this is not a regulation of speech, we don't engage in a Gentile balancing. Absolutely. Yes, Your Honor. It's only if we conclude that it is a regulation of speech. That's correct. Yes, I think the conduct versus speech question is preliminary. In one sentence, what is the conduct that's being regulated? I mean, in just a few words, it's the practice of law. I'm sorry? The practice of law, and in particular, the representation of a particular client in a particular case. I see. So the contract is not the contract. The contract that's being regulated is the practice of law. Well, I think the contact is happening in the context of the practice of law. But we know that the practice, I mean, Gentile was about the practice of law. I mean, I was frankly surprised, but it turns out that there is a fair amount of support for the proposition that the practice of law, because it entails speech, is protected by the First Amendment, even when it's representational. And that's why Gentile said, well, but that is a strong interest, which you can balance. But they didn't say this wasn't the practice of law. Well, and I do think it is the combination in some ways of the practice of law and the fact that the conduct here includes just the mere contact with the victim. So the practice of law can be speech. I mean, Gentile is a speech case. But then when you say it's just the mere contact, then I go back to where I was, which it isn't really just the mere contact. It could be. Under the statute, you can revise the way you enforce it so that it's only, you know, there's a letter that is sent through the prosecutor's office, and it's just about who's sending the letter, and that might well be contact. But that's not the way it's administered. Yeah, and that's, I think we just have a different reading of how the statute applies and has applied to this as to legal analysis here. And I see I'm over my time, so I don't want to go too long. No, take your time. But in our view, it really does just regulate that initial contact. Certainly, defense counsel might want to deliver a particular message, and it's not going to be delivered given how this plays out in practice. But the only way that the defense counsel is not going to be able to deliver their message to a victim is if the victim does not want to have contact with defense counsel. Well, after getting this letter, which tries to talk them out of it. And again, I think you and I are going to have a different reading of whether the letters you're trying to talk victims out of it. I think the letters can be fairly read as just plainly providing notice of the victim's rights, which are substantial in Arizona and constitutional. Mr. Samuels, I guess back to this threshold then of whether it's speech at all, I guess I'm trying to figure out, the statute uses this term contact, but we're talking about speech. The consent is even-handed, but do we have any other case where two sides, two different viewpoints on a particular subject matter, one has to go through the other to communicate that? I don't, Your Honor. I think this is a pretty unique case. Is it? It seems to me, listening to Judge Johnstone's question, that in the ordinary case, you can't talk to the party on the other side without the lawyer's permission. Well, I think that's right, and I think the closest analogy you can get to- I'm not sure the victim is on the other side here, but there's lots of examples where professionals are prevented from talking to someone without going to the court first, aren't there? Certainly. I think in Rule 4, the 4.2 context is obviously the closest example. But that's reciprocal. I mean, that goes both sides. That's right. Certainly. Identity-based. I mean, so it wouldn't violate the First Amendment, probably. Yeah, but I think it is one helpful lens through which to see this, which is imagine the victim is represented, which is not common, but does happen a little more commonly in Arizona, I think, than in a lot of systems. So if the victim is represented, everyone agrees that you have this single point of contact that everybody is going to have to go through. The difference there, obviously, is that the prosecutor is also going to have to go through. I understand that, and this is another problem with it, maybe less of a First Amendment problem than a due process problem. But even in that instance, as I understand it, the letter has to go through the prosecutor. Even in the instance when the victim is represented? Yes, I think there's some ambiguity in the statute there. Is there ambiguity in the statute? Why? I'm not sure the statute speaks directly to the question of whether defense counsel needs to go through the prosecutor when the victim is represented, but I can understand why defense counsel typically does that. Given the ambiguity, I understand their caution in that regard. So the other problem here is that not only is it one-sided, but it also gives the prosecutor information that isn't reciprocal, i.e., that the defense, even if it succeeds and they do get to talk to the victim, they now know that they've talked to the victim. Which, with regard to witnesses in general, when the prosecution is talking to them, the defense does not find out. To the extent that that's true, and maybe to some extent, that really gets more to a defendant's rights, to Sixth Amendment rights. I don't think that has much impact at all in the analysis here, where we're just talking about the personal First Amendment rights of defense counsel. Okay. We didn't do well at leaving you five minutes for rebuttal. We'll put three on the board and see where it goes from there. Thank you very much, Your Honor. Thank you. Mr. Keenan. May it please the Court, Jared Keenan on behalf of Plaintiff Appellees. With me today is Kathy Brody. I'd like to pick up with this conduct versus speech discussion that Your Honor's had just recently with opposing counsel. As the District Court correctly noted, this regulation, the victim contact prohibition, cannot, the conduct at issue that is regulating, cannot be the practice of law, because as Your Honor's pointed out, it doesn't apply to both prosecutors and defense attorneys. And there's other support for that in the record and in the rules. Let me jump in there in your framing of this as a victim contact prohibition, because that strikes me as a potential distinction from the cases. This is kind of a hard case to categorize. It's not a prohibition, because whatever message the defense attorney intends to communicate, if the victim consents to either prosecution or defense, that message can be delivered. It's not compelled speech in the way of, you know, we have Turner Broadcasting, we have Sorrell, we have Citizens United. Those all involve either mandates or prohibitions. The best I could do to find any case that dealt with this kind of consent procedure is Hill v. Colorado, and there it was not content-based, perhaps, but it did apply to advocacies, solicitation, counseling, et cetera. What are we supposed to do with the fact that this isn't a prohibition? The defense counsel can say what they want if the victim consents, and the prosecution is under that same condition. Well, I take your point. However, I think that the facts below sort of undermine this argument that the government made in its briefing about how once a victim agrees to contact, that the defense attorney can talk about whatever he or she wants. The district court pointed out that, in practice, this prohibition does, in fact, prevent all contact between victims and defense attorneys. And if you look at the letters, for example— But this is an as-applied case. This is not an as-applied case. Correct. This is a facial attack. That's correct. So the fact that no victim, assuming that the record bears that out, which I don't think it does, that no victim has ever consented to talk to defense attorneys, what difference does that make? That actually does not make a difference, Your Honor. And I guess what I was trying to get at is, if you look at the letters that are sent by the attorney general's office and others that are in the record, all of those talk about the right of a victim to either consent to or not consent to an interview, which in Arizona is a very specific thing. It involves a formal process where the prosecutor's available—present, sorry. But you're not attacking the letter here. You're not attacking it as applied. What you're saying is this statute cannot have any constitutional application because it abridges you, your defense attorneys' right to speech. So I guess—let me pose it for you a different way. What if the statute applied both to prosecutors and defense counsel? Exactly the same way. Would it abridge any First Amendment rights? It may, although it would be a much different statute. Why would it—I just said—I just gave you a different statute, so I knew that. Why would it abridge your First Amendment rights if both sides were prohibited from making any contact with a victim except for the same procedure that defense counsel now have to use? In that situation, Your Honor, it likely would be a much harder question because, again— Well, I meant it to be a harder question. So tell me why it would—tell me why—I see in my view your entire argument in this case is we're being treated differently than the prosecutors. So I'm saying if you were treated the same, would you have a First Amendment problem? No, then it might actually be considered a regulation of conduct. And that's the way that when victims are represented by their own counsel, that's how that plays out. It would be the same rule. So it's either contact or it isn't contact. The difference would have to be that it's not identity discriminatory or content discriminatory on the substance. But it can't be that it's contact one way and not contact the other way. If it's contact, it's the same thing. If it's speech, it's the same thing. Well, if the statute applied to both prosecutors and defense attorneys, it might not rise to the level of a content-based and viewpoint-based— Right, but not because it isn't contact. It's contact in one sense and another. Correct. I think you're right. So I—here is my question. What exactly speech are you challenging? Is it the talking to the victim to ask them to have the interview? Or is it the interview? That's the problem. The problem is well prior to the interview itself. Because this statute, again, is so broad and so sweeping that it limits all contact between defense attorneys and victims. I understand. Well, I know what the speech is. I mean, in terms of the speech kind of thing, what speech are you saying is being suppressed? So there are many examples of the type of speech that defense counsel wants to have with crime victims in the record. And so this statute prohibits all of those from happening. The problem is that the district court opinion and your brief act as if—and this is what we were saying earlier— they were banning the interviews. They're not banning the interviews. They are making a precondition to the interviews, which is to have the consent and to have it go through the prosecutor. And I'm not sure—it seems to me that we do decide the facial challenge on the record, and the record includes the letters of the way it's being administered. But—so what exact speech are you claiming is being suppressed? So there's—and that's where I was getting at with the formality of these interviews. These interviews include questions about the facts and circumstances— But you've been challenging—I did not understand you to be challenging the provision that says that the attorney general can come to the interview. Is that part of the challenge? No, no, no. But what we are challenging is that a defense attorney can't go up to a crime victim and say, excuse me, would you like to have a conversation with me? So the speech that you're challenging is that you can't go up and say that. Not what happens afterwards. Is that right or wrong? That's part of the speech. But you agree the statute, to the extent it gives the crime victim the right— absolute right to refuse to speak to defense counsel after the court order, is constitutional. That's correct. Okay. So then Judge Berzon must be correct that what you're attacking is your inability to go directly to the victim and ask whether or not they will consent to speak to defense counsel. Yes, it's just broader. Earlier we— Well, is it broader or not? That's broader. I don't understand what's broader about it. I mean, anything that happens afterwards—I mean, you may be able to wrap in the way in which that's happening, and that may be a question of what can you reach as a facial challenge. But as to on the ground, the way it's happening is by the prosecutors writing a letter, which I characterize as a discouraging letter, instead of just passing along your letter. Which, as far as—suppose the statute said—or suppose the statute were interpreted, because I think it could be, to simply require that you write a letter to the—you can't go up and knock on the door. You have to write a letter, and then the prosecutor will send that letter on. Would that have the same problem? Would that be a frustrating problem? It would be far less of a problem because then the defense attorney would be able to at least convey its intended message to the victim directly—well, not directly. They would still have to go to the prosecutor, but they would be able to at least get their letter in the hands of the victim. There may still be some First Amendment problems with that, but it would be different ones. What's the problem then? Because then it would seem to be about conduct in the sense of who's going to send the letter. Is that a First Amendment problem, who's sending the letter? No, that is not. But earlier there was a question about prosecutors having unfettered access to the victims, and opposing counsels said, well, in the normal course, yes, anyone who goes up to someone and asks to speak with them, that person can refuse to speak with them, and that would sort of cut off the communication. That's what defense attorneys want to do as well. They may want to send a letter to a crime victim in their own words, but they also may want to go up to them and say, hi, will you meet me at a coffee shop and have a conversation about the facts and circumstances of the case? See, I keep coming back. I think you may have a fine equal protection case. You may even have a Sixth Amendment case. But are you telling me the state of Arizona lacks the ability to say, forget the machinery, defense counsel may not directly contact the victim without the victim's advanced consent? Well, I think advanced consent is, I'm confused about that. Well, it's very easy. I'm writing a different statute, so you don't need to tell me it's a different one. The statute says, you want to talk to a victim? You must send a letter to the victim that says, I would like to talk to you. I must remind you that under Arizona law, you have the absolute right to accurately represent the law. That's the obligation that it imposes on defense counsel. You have an absolute. That's the right. It's an absolute right. I mean, there's no condition under which you need to exercise it. But Judge Berzon and I can argue about that later. My question is, would that violate your First Amendment rights? It may. Well, may doesn't help us. Either does or doesn't. Tell me what your view is. It may because it would compel particular speech. Yeah, it would say to defense counsel, the way you get consent to talk to a victim is you write them a letter. And let's let's assume for a moment that the letter the advocate sends is not one sided. You write a letter that says, I really, you know, I would like to talk to you. Here are your rights under Arizona law. And it accurately says what your rights under Arizona law are. Is that does that violate the First Amendment? Again, it may for compelled speech grounds. It certainly would be a much better situation because you're compelled. You're not. You're compelled to say that rather than I'd like to talk to you because I think that because I think I can derive from you evidence that might help my counsel a trial. My witness a trial. Right. Well, one of the things that came out in the testimony, if you look through the record, is is the rapport that defense counsel or investigators can build with crime victims in order to both. No, I understand why it's better for you. Look, I think it probably violates the 14th Amendment. It may violate the Sixth Amendment. What I'm having difficulty with and why all these questions are coming out is why it violates the First Amendment. And it seems to me your position has to be that the state lacks the ability to tell you when you however you want to contact a victim. You must tell that victim simply you don't have to talk to me, but I'd like to I'd like to contact you. And if I could add up maybe a clarifying amendment to Joshua's question, at least clarifying for me. All right. Let's distinguish here between the scope of the First Amendment and the scrutiny that applies. There are all sorts of stuff. But I mean, of course, the bar cases, the bar solicitation cases, all those lawyers solicitation cases didn't violate the First Amendment. They're analyzed as speech, commercial speech or other things. So so are we tell us when you answer is tell me whether you're talking about whether it's within the scope of the First Amendment or whether it might just satisfy whatever scrutiny because it's viewpoint content neutral under the First Amendment. But the First Amendment applies because it's speech. Yes, I agree with that. So what I was trying to articulate is that the First Amendment certainly applies to all these situations, even the hypothetical statutes, as Judge Hurwitz pointed out. The question becomes what level of scrutiny applies and whether or not that scrutiny dictates that the statute is constitutional or unconstitutional under the First Amendment. So let's assume that. And I think you agree with this, that the state has a sufficient interest to want the victim to know in advance that they don't need to talk to the defense counsel. And so if the statute were the way I described it, you'd say, yeah, it might implicate the First Amendment, but the state's interest overcomes. Why is it a different analysis under this circumstance? It's a different analysis for several reasons. First off, again, this statute is much broader than that and much more sweeping, prohibiting all initial contact. Yeah, I know you say that. But look, this is not a case about you wanting to go to their door to get their vote. I mean, if we rule for the state and hold you can do that. You're going to go home and say, I lost the case. This is a case in which your entire case is built around. I need to talk to these people because I'm defending somebody in court. So so focus on on that aspect. But on the knock on the door example, let's change it up just slightly. If a defense attorney were to go around in the neighborhood that the defense attorney knew a victim lived in and was going to knock on every door to explain their view of the death penalty, for example. This is silly. This is really a silly example. That's not why you're attacking the statute. You're attacking the statute because it makes your job difficult. It makes it difficult for you to talk to victims and obtain information that would be useful in defense of your of your clients. So, I mean, if we interpret the statute to say, OK, it's perfectly constitutional, but you can go door to door in the neighborhood. Although when you knock on the door of the victim, you have to tell them, by the way, you're the only person in the neighborhood who has a state constitutional right not to talk to me. You will gain nothing. So that's why I'm trying to focus on what the First Amendment implications of preventing you from talking to victims for the purposes of conducting the defense of your clients. Well, the speech at issue, it doesn't really change the analysis, whether you assume that it changes mine. Let's assume it's important to me. I want to know why in the course of defending your clients, you have a First Amendment right to say whatever you want to to a victim to obtain their consent. And you have the right to say it directly. Tell me why. Because just as the district found this statute attacks speech as speech, and it doesn't matter necessarily the content of that speech. It is a it is preventing one one viewpoint, the viewpoint of a criminal defense attorney from speaking with crime victims and only criminal defense attorney. That is being precluded. It is not the the representation. It's not the interview itself. It is the whatever is said to initiate the contact. Is that do you agree with that? That is part of your brief. What's the rest of it? The rest of it is everything that the defense attorney wishes to convey after the fact. But once you get consent, you can you agree once you get consent, there's nothing in the statute that's content that prohibits any content. Arguably, no, but that's not arguably and facially. No. So let's get back to what's troubling me. And I think Judge Burzon's questions are aimed at the same point, is that this is a First Amendment attack. And what you're prohibited from doing here is contacting the victim to obtain consent, except through a specified procedure. So you can't do it directly. You have to do it through an intermediary. In this case, it's the victim's advocate. But the statute, I suppose, would allow the prosecutor just to do it without the victim's advocate. Why is that a First Amendment problem as opposed to something that burdens your ability to defend someone as opposed to something that treats you unfairly vis-a-vis prosecutors? Why is it a First Amendment problem? That's for me. That's the critical part of the case. So tell me why that's a First Amendment problem. If I understand the question correctly, the premise is that once the victim consents to having a discussion, a criminal defense attorney can have an interview with the crime victim. But the problem is that that interview, those types of interviews are pre-trial interviews that focus on the facts and circumstances of the individual case and do not allow for additional conversation or content. Where do you see that in the statute? Well, it's not in the statute. Well, you're attacking the statute. If what you were attacking was the state's view that once you have consent, you ask too many questions, we'd have a different case. You're attacking the statute. And it seems to me the problem with the statute is it prevents you from getting consent the way the prosecutor gets consent, which is they just call up and say, do you want to talk to me? So tell me why that's a First Amendment problem. Because you are required to speak through a government script in order to attempt to get that. But that's the right focus. Now you're focusing on what is wrong with the regulation of the way the consent is obtained. Now that also isn't in the statute, that it has to be through a government script, but it's practice it is. So to reach that on a facial attack, I think probably we do, but that's not in the statute either, exactly. Right, but the subsection of the statute does, as opposing counsel pointed out, does not require the prosecutor to present anything from the defense team to the victim itself. It doesn't require anything, but it would allow them. And if they want you to get out of this pickle, they might in fact decide to do it that way, except they don't want to. But if they did it that way, would it be a problem? If they were required to present a letter from the defense counsel? Not required, but if what they actually did was to say, all right, you can meet the letter that you want, your initial contact letter, and we will send it on. All right, we won't make you say that there is no obligation, but we'll put in another letter that says, the next day send a letter saying, by the way, you don't have to consent. All right, we won't make you say it, so we'll take that out of the case. Is that okay? No, I think that still is a valid facial challenge because the statute doesn't require them to do that. And so one prosecuting agency might actually send the letter from the defense counsel. That's an as-applied challenge if you're saying it could be constitutionally applied, but some people won't do it that way. Let's try to strip it down to the bare bones here. The statute says only initiate contact with the victim through the prosecutor's office. So let's say instead of the current mechanism, this is a facial challenge, the prosecutor has a website or a standard form. No persons, no other words, a survey goes out to all the victims, statutory victims, much broader set than just the victim. And it's just click yes or no. And the prosecutor sends it out, comes from the prosecutor's email, click yes or no, goes to the prosecutor's office, goes to the defense attorney's office, they do that, done. Is that a speech problem and why? Yes, because again, it's requiring the defense attorney's speech to go through the government conduit, the government's website. But here's the problem. If you think that it is legal to prohibit direct contact between defense attorneys and victims, and I think you've said it is, correct? No, I don't think it is. So you're attacking, not only, your attack would invalidate all, so you think that direct contact is required by the First Amendment? Direct contact meaning going up to the door? Direct contact, even a letter. I want to contact you through a letter. I don't want to, you know, and I'm not going to tell you in this letter that you have the right not to contact me. So it seems to me the constitutional right that's given in Arizona to victims is not to be contacted by defense lawyers, whether by letter or otherwise, in the absence of the victim's consent. And so I'm asking you, do you think it would be unconstitutional? It would be unconstitutional. It's unconstitutional simply because you can't send that letter directly to the victim? Yes, yes. But also, it would be unconstitutional if it would be on every other state statute. Well, no. That required advanced consent would be unconstitutional. No, no, no. Well, look, there are a lot of situations where people don't want people soliciting at their doorstep, and yet the government doesn't prevent those things because of the First Amendment. And this is a similar situation. We're asking... Well, but see, now what you're telling me is that the no contact rule is unconstitutional. You're not worried who it's filtered through. You're not worried about the victim's advocate's letter. You just think that it's unconstitutional to prohibit you from directly contacting victims, correct? I'm saying it raises First Amendment issues, whether or not it... If it's constitutional, then I have a problem with... So I want to know, is that unconstitutional or not? Yes, I think the government preventing someone from going up to another person and asking if they want to have a discussion is unconstitutional. And that person can clearly say no, and that cuts off the conversation. And doesn't that turn on the interests rather than the fact that speech is involved? We're all talking about speech here. We're all... This is all First Amendment now. The battle goes now to the interest and the level of scrutiny, right? That is correct, yes. And that's why I think... Say more about that. Yes. And so I think that while the government likely has more of an interest in preventing direct contact with crime victims than someone who's not a crime victim, there's no evidence. If you look at the record below, this is after years of merits briefing, full pre-trial discovery, and a trial on the merits. The government simply presented no evidence to support its interest in preventing this type of contact between defense attorneys and crime victims. And so to get to your question, it does come down to the level of scrutiny. This statute is, again, so broad and sweeping that it prohibits all contact from defense attorneys to crime victims. And that is a First Amendment problem and unconstitutional as the district court ruled. I see that I'm... What is actually before us? The earlier panel said that the role of criminal procedure is broader. It states that the defense must communicate requests to interview a victim to the prosecutor, not the victim. And in contrast, the statute says that a defense attorney or investigator shall only initiate contact with the victim through the prosecutor's office. It's possible to contact a victim without requesting to interview them and thus violate... So are we... Why are we not have before us only the circumstances in which you're trying to contact a victim without requesting to interview them? I think that those circumstances are the vast majority of contact that defense attorneys want to have with crime victims. I think that's exactly wrong. I thought you just said you want to go up and knock on their door and ask them if you can interview them. No, not an interview, not a formal interview. I think Rule 39 applies... I think a formal interview is an interview. But you're saying Rule 39 only applies to formal interviews, but where do I get that from? Okay, so if you look at the rules of criminal procedure, interviews aren't really a thing. What you have a right to in Arizona is pretrial depositions. And if witnesses refuse an interview... Right. What I'm trying to figure out is why isn't an interview just used in its colloquial form, which is to say I can't go to you and ask you questions. Well, because of this issue with pretrial depositions, I think that in Arizona, and there's some case law to support this Arizona case law, right, that discusses an interview in this formal pretrial process. I'm somewhat familiar with the rules. The Arizona case law says if the victim refuses an interview, refuses to talk to you, then you can go to the court and say, I really need to talk to them, and please order them to show up for a deposition. But it doesn't define the contents of interviews. It doesn't say, well, when you go to see the victim, you're limited to asking questions about X, Y, or Z. So I read the word interview in the rule, at least, as just saying in the normal sense. I want to ask you some questions. And so I'm not sure why we should read it more broadly, I guess. I'm arguing that I would read the word interview in that scenario, in Rule 39, more narrowly. I guess you're reading it and saying, well, this means, Rule 39 interviews are a special sort of thing. And we want to do more than the special sort of thing. Is that what you're saying? That's right. Okay. And I'm asking you, how do I get that out of the rule that just says you may not interview the victim? To be frank, I think that the rules were written in a confusing way. Because I don't think – what you have a right to, again, is a deposition. But victims have – No, I don't see it as a deposition. Yes. And the rules apply if you're asking irrelevant questions or somebody can object and the judge can order the victim not to answer. But I'm not sure why interview – you say narrowly, I say more broadly. But why I should read the word interview in the rule as narrowly as your urge? I don't think you can because it says you must communicate a request to interview a victim to the prosecutor, not the victim. If you were to do a deposition, you don't go to the victim either. You go to the court. And if you want to communicate the request for a deposition, you don't go to the prosecutor. Well, in practice, you – okay. So the reason that is slightly different for victims than any other witness is because any other witness who refuses interview – Yes, who refuses an interview can be ordered to be deposed. So can victims. Well, victims have an additional right to refuse that deposition. But the Arizona Supreme Court has said if they are precipient witnesses to the case as opposed to just victims, the mother of the murdered guy, then they can be ordered to show up for depositions notwithstanding the constitutional provision. I have – I practiced as a public defender for years. I have never had a victim – a court order a victim for a pretrial interview even if they're a precipient witness. It never happens in Arizona that I'm aware of. But the Supreme Court has said it's permitted under the Constitution. Maybe in rare circumstances. Well, I'm not asking you whether it happens or not. I don't have the record. Hasn't the Supreme Court said this provision, which is derived from the Constitution, does not prohibit a judge from ordering a deposition? I don't think that's accurate because of the further – I'm not accurate at least representing what the Supreme Court has said, or I'm not actually representing what happens in practice. So I believe because the Victims' Rights Statute allows victims to refuse a discovery request that they're allowed to refuse any interview. And you think that the Arizona Supreme Court has not held that the statute and the Constitution don't prohibit judges from ordering the deposition of victims? Oh, they can. The Arizona Supreme Court has issued a decision on this point, has it not? Correct. And it has said, notwithstanding the language, whatever it seems to say, a court may order the deposition of a victim to the extent that they're a precipient witness. I'm not aware of that case. So you don't challenge Rule 39? We have not challenged Rule 39 in this litigation. Okay. So as Judge Berzon had suggested, I think we're kind of stuck reviewing – we've got a realm of speech. We've got to subtract the Rule 39 speech out of it, assuming it's speech, whatever Rule 39 covers. That's not something we're reviewing because after the standing ruling, you've only got standing to challenge whatever's left, which is general advocacy about capital punishment, other things, what's covered by the statute that isn't covered by Rule 39. Is that right? Yes. There's one important distinction that I think gets glossed over when we're talking about Rule 39. Rule 39 doesn't say that you have to get permission or go to the prosecutor to interview a victim. It simply says to request an interview. And that's why I think it gets back to why we're talking about the formal interview process because, as the district court noted, defense attorneys want to talk about not just capital punishment, not just sort of justice issues. Why does that matter for purpose of the First Amendment analysis, that distinction between the rule and the statute? Well, it's because the statute broadly prohibits all of that contact. They can't contact a victim to talk about death penalty, to talk about justice broadly, to talk about the system, to talk about the facts and circumstances of the case. It prevents all of that. It seems to me that the statute is not about that and that we could, or we could certify to the Arizona Supreme Court or something, the question of whether the statute actually applies to those kinds of contacts with the victim because we were told by the state that they don't regard it as doing so, and it seems pretty clear that's not what the statute's about. So if that's what you're resting on, and in large part you were. I mean, certainly the district court had a whole list of things that you couldn't say. First of all, you can't say them if you get consent, but second of all, it doesn't seem like that's what the statute's about. So is that what you're resting on, i.e. you can't? I mean, so if that's where we are, that we are now going to decide only whether you can contact them to talk about the death penalty, or justice in general, then we have a different case than we all thought we had. And that's all we have because the rest of it is backed out by the criminal procedural. No, again, I disagree with that analysis. I think that what the Rule 39, what that backs out of this court's interest or view is that the formal interview process, to request a formal interview under one of the rules that discuss the deposition, right to a deposition. It doesn't say deposition, and you don't get a deposition by going to the prosecutor. I just don't understand. Right, but you also don't get a deposition if the witness agrees to a formal interview. That's true. It doesn't say formal. See, that's my problem. It doesn't say formal in the statute. The reason I keep using formal… You've now corrected this aspect of Arizona criminal procedure that's not in the rules, but there are interviews and there are formal interviews. Well, the reason I use… I don't see that distinction. I'm not sure it makes any difference, but I don't see that distinction in the statute. I think the reason I'm using that word, formal interview, is just to differentiate between something that is done through the rules of criminal procedure, pre-trial, and the types of speech that the district court noted in its findings of fact that the defense attorney wants to speak to victims about. And I think that those things are very different. Can we have a supplemental briefing on this question? I mean, that is, what does Rule 39 mean and what is, in fact, backed out of this case as a result? I don't think you need that. If you look at the district court's findings of fact, the district court noted from the trial evidence, again, that defense attorneys want to speak to crime victims about a whole host of issues. Okay, so let me separate the world for a second because now I want to figure out what this case is actually about. You want to speak to them about the whole world, don't you? Correct. Including the case. That's right. Okay, and what your argument is, well, is it okay to keep you from speaking to them about the case? No. It is not? It is not. Not through this mechanism? Not through this mechanism. Okay, because it's not okay because you were being treated differently than the prosecutor. That's part of it. I mean, that gets to why it's not a regulation of attorney conduct or the practice of law. It's not a regulation of defense attorney conduct. It may be unconstitutional because it denies equal protection. But I'm just trying to figure out why it is that you think this broad contact that you wish to make to talk about things other than the case. And by the way, I think talking to a victim in a capital case about her view of capital punishment is talking about the case because that victim has a right to come to court and tell the judge what their view of the case is. So I'm trying to figure out here what it is, what the core of the speech you're really complaining about is talking about the case. Correct? If you define that so broadly as to include discussions about the death penalty, discussions about... Well, discussions about the death penalty in a case where the victim was murdered. Yes, but it could also be discussions about restorative justice, about what the justice system means, what punishment means. OK, so now I'll get back to Judge Berzon's question. The state says we don't think the statute subjects you to any discipline for that. It's the potential discipline that got you standing. And so if that's what you think makes the statute overbroad, in other words, what if we were to say, look, it's fine as to talking about the case, but to the extent it prevents you from knocking on the door and asking them whether or not they want to buy Girl Scout cookies, it's probably overbroad. What do we do with that? Do we send that issue to the Arizona Supreme Court and ask them whether it really forbids that conduct? Or would you really care? I think two things. First, I think the state bar does think that... I've looked at this record in great detail. The state bar has never disciplined anybody for any of your parade of horribles. Correct? No, that is not true. The record shows that attorneys have been disciplined for inadvertently contacting victims about other topics. No, sorry. The record showed that attorneys were disciplined for contacting victims, and the record showed that at least one attorney was referred to the bar for inadvertent contact. For contacting victims. Correct. Was he disciplined? In that case, no. But inadvertent contact is not necessarily what we're seeking here. What we're discussing is that this statute prevents a world of conversations or contact or speech that defense attorneys want to have with crime victims. It prohibits all of that. Mr. Keenan, why wouldn't it be equally problematic to apply it to a defendant? That was my next question, too. It might be. That's not the case we had before us. And I would say that the state's interest may be stronger in that situation. Again, they presented no evidence over years. The whole attorney stuff is just a clause in between that the defendant shall only initiate contact with the victim. So that turns on just same speech, same scope, different interests when you apply scrutiny. And those interests are? So the different interests would be, first off, defendants themselves aren't bound by attorney ethics that require them to treat any witness in a certain way. And there are. And so that alone is a huge difference between the two situations. So is there a First Amendment problem with prohibiting a defendant? I mean, put aside. Is that a First Amendment analysis at all? Let's assume we just had a statute that said the defendant may not contact the victim. Would would there be any First Amendment problem with that statute? Put aside balancing and everything else for a moment. Will we even get to whether there's a First Amendment problem? I think that there certainly is a First Amendment. It touches the First Amendment. The question is, does it violate the First Amendment or is that prohibition justified by the state's interest? There's a balancing. You think that a statute that merely prohibited that would have to be analyzed under a First Amendment rubric? I think if that challenge was raised, yes. But I think that the outcome would likely be much different than the outcome here. So now now we have a statute that says the first defendant and his agents may not contact the victim. Why? Why is the analysis different? Well, that analysis, again, I think falls somewhere between the two, because then you're talking about is the defendant's agent the criminal defense attorney? And if so, then you're back to this. Why are the First Amendment interests of the defendant and defense counsel different? Why each? I understand how you're balancing might be different. But why are the why are the First Amendment interests of the defendant and defense counsel different? Because they each have their own individual First Amendment rights. The question is, are those rights violated with sufficient justification to allow the regulation at issue? We don't have what we do have here is a challenge related to the attorneys. It's a very profound question of what kind of First Amendment rights do attorneys have in their representational capacity? And is that, for example, different than the Kingley case? I think that's what it was called, where you are regulating what psychotherapists do when they're being psychotherapists. And here we'd be regulating what lawyers do when they're being when they're being representatives. Now, Gentile or Gentile, whatever it is called, seems to recognize some seem to recognize those out of court speeches as being representational in some fashion, and therefore governed by a different standard. So doesn't that at least get you into a Gentile standard when you're talking about representational activity of lawyers? So I think Gentile, to the extent it establishes a lower standard of restricting lawyer speech, it does so only when necessary to protect the integrity of the judicative process. And that is not. I didn't say that. I didn't say that. It said that is a interest. That was suffice. It didn't say it was the only interest. That was suffice. No, but it talked about the need for a fair and impartial jury, which is crucial to a fair... But what it said more generally was that you balance the First Amendment interest of the lawyers. And they did seem to think there were First Amendment interests of the lawyers against the state's interest in regulating the profession more generally. And then they said, well, this is an interest. Yes, that is accurate. But that heightened scrutiny, this statute doesn't pass that heightened scrutiny. Some of the things that the Gentile case relied on was that it was narrowly tailored to achieve the state's objectives. That's not what we have here. It only applies to speech that's substantially likely to materially prejudice an ongoing proceeding. Again, not what we have here. And then it's new to us the points of view, which we don't have here. They're expressing a different interest. Anyway, your time is way up. Mr. Keenan, thank you for your generosity with us. And we will, Mr. Samuels, give you a little more than three minutes. But again, let's see how it goes. We'll see how it goes. I want to start by trying to clarify a few things just to make sure that our position is clear about what the statute covers and things like that. I'll actually start with the Arizona Supreme Court. Judge Hurwitz, you asked some questions about what the state of the law is in the Arizona Supreme Court. My understanding, I talked about the Champlin case earlier, which says a victim can be compelled to give a deposition. But I want to be clear, that case was in the context of the victim is a victim in case number one and not a victim in case number two, and they could be compelled. So the law is unsettled about whether or not a victim can be compelled to give a deposition in the case in which they're a victim. Yeah. I think the number one versus number two distinction here is important. And our position would be that they actually cannot be compelled in the case where they are a victim. I want to know your position on that. Yes, I just want to be clear about that. Wouldn't that present a Sixth Amendment problem? Thankfully, that's not the case. We've got enough to talk about with the First Amendment. Well said. Go ahead, Mr. Stanton. I also want to clarify, as to the scope of the statute, what our position is as to what the statute actually covers. It obviously covers direct contact with the victim about the particular case, trying to gather facts about the case or talk about the particular case. I also think it covers general advocacy that relates to the case. So if you have a capital case and you wanted to show up on the victim's doorstep and say, don't say a word to me, Mr. Victim, I just want to tell you everything about the death penalty, I think that's problematic, too. But it doesn't cover the Girl Scout cookie example. That's our view, is that it's really focused on the defense attorney's role in the course of ongoing proceedings. Even if the defense attorney knew that the victim was one of the people to whom she was trying to sell Girl Scout cookies? Yes. So imagine it's a small town and the defense attorney knows that the victim lives in a particular neighborhood. I don't think they have to alter the Girl Scout cookie route in order to avoid selling Girl Scout cookies to the victim just because they know that that person is a victim in one of their current cases. What about the text of the statute that permits that reading in this posture? Well, I think the statute pretty clearly gears itself towards ongoing proceedings. It only applies in the statutory scheme once charges have been brought. And it requires you to go through a prosecutor, and obviously there would only be a prosecutor when there are active charges. And so I think that the reasonable reading of the statute is that it really is geared towards those ongoing proceedings. And so to answer one of your questions, Judge Berzon, I don't know that we feel compelled to provide any supplemental briefing on that issue. And I hope our position is pretty clear about what the statute covers and doesn't. That wasn't really the question. The question was about how the standing ruling interacts with what's left in this case. You said, well, nobody said it, but that's nice. It's still a standing ruling. And we have the problem of we're now having this debate about what an interview is. Because Rule 39 says that you must communicate requests to interview a victim to the prosecutor, not the victim. And the statute deals with contacts. And the panel said that you can contact a victim without requesting to interview them. So if that's all that's before us, what's before us? And what does it mean, interviews? Because we're having this debate with your opponent. You seem to disagree about what an interview is. Or do you disagree about what an interview is? I think there is some disagreement there. Ultimately, though, I don't think it's necessarily material to this Court's First Amendment analysis in this case. I think even if you were going to carve off a piece of the case because of the standing ruling and how the rule interacts with the statute, I understand the other side to be pointing to particular aspects of how contact is initiated and thus conversations can be started, and that that's really the core of their case. And that, I think we all agree, is not covered by the rule. And so I don't know that the interview question — Or a request to interview a victim isn't a contact. Isn't contact a victim? Of course it is.  So there must be something that is contacting a victim that isn't a request to interview them. So take, for example, I just made up an example where a defense attorney shows up on a victim's doorstep and says, you know, okay, victim, you just answered the door. Please don't say a word to me. I'm not going to ask anything of you. I just want to tell you. Well, the question is, is that all that's left in the case? I'm not sure it's the only thing that's left in the case. But even if it were the only thing left in the case, I'm not sure that that necessarily impacts the analysis here. And that I understand the other side to be saying, even if that's the only thing left in the case, you still have the same First Amendment problem. Obviously we disagree, but I think that's really — that cuts to the core. None of the interests proper, going back and forth between the state interests and whether they're sufficient, none of those relate to the interview representational piece. It's all much broader, whether secondary effects or whatever rubric. It's not about the interview. I think that's probably a better way of saying what I was trying to say. And I take it the state's view of our MEM DISP is that it really didn't limit the issues. It didn't prevent the other side, AACJ, from raising the issues they're now raising. That's right. We didn't read it that way. I mean, certainly I think the prior decision was right to be thinking about redressability, and it was in that context. So it didn't say you also don't have — it didn't say, but if you were only arguing this, you wouldn't have standing. It said you have standing because you face under the rule the potential for discipline. It didn't address whether or not they would have standing if there were no rule and we were only dealing with the statute. Yes, yes. I think that's right. On the conduct piece, and I see this question in Wired Weather, certainly gave you plenty of time at your desk to think about this. Again, trying to figure out what rubric this falls in as a First Amendment case or not. So Hill v. Colorado, the only one that I could find that involved consent. I mean, would it have been — and the court upheld the law there requiring consent to be counseled by a sidewalk counselor or protester. Don't you think it would have made a difference if the Colorado law required the protester to request consent through the clinic? And why or why not? Or do you have something better for me on whether this is a speech case at all? I think in order to answer that, I really would have to back up and look first at the conduct versus speech question. And I really do think this is quite different where you have an attorney representing a client in ongoing proceedings. But that doesn't change the speech issue. That just changes what level of scrutiny we might apply. That's right. But I think before you even get to the question of applying any level of scrutiny, you have to figure out that there really is speech involved. And obviously our position is that this is really not a speech case. It's a conduct case that has an impact on speech. All of the attorney conduct cases, all usually upheld in deferential, but all speech cases. Do you have an attorney conduct case that doesn't involve speech? No. I think the best cases for us on that front are the recent conversion therapy cases like Tingley and Pickup. Pickup in particular, part of Pickup is no longer good law after NIFLA, but part of it plainly is, and Tingley says that. And Pickup has a section of it that pretty clearly details what it calls a spectrum from conduct to speech. And on the speech side of the spectrum, you have public dialogue, even if it's by a professional. And on the conduct side, you have what you have in something like Pickup or Tingley, which is someone engaged in the practice of their profession. Psychotherapists in those cases, the practice of their profession is out loud. It's words, just like for attorneys. But that doesn't mean it's not conduct. Does it make a difference that all of this speech is occurring within the context of a patient or client relationship? I mean, Gentile, all of these cases involve, we talk about within the practice of law, but this is happening within a client relationship. Isn't it a distinction that this statute doesn't cover anything in the client relationship? Well, I think this statute is plainly contingent on a client relationship. It only applies to defense counsel in a particular case. The speech that takes place is not occurring, unlike all of these other cases, even NIFLA, within a patient or client relationship. Yes, but I think what's important here is that what the statute regulates is the initial contact. It doesn't care at all about the speech that follows if the victim consents to the contact. Okay, what do you got on that, though, in terms of the initial contact? How is the initial contact not speech, conversation? I don't think there is a case that clearly resolves this one way or another, as with many of the things we're talking about here, I guess. Quite graphically, he has a letter he wants to send to the victim, and he can't send that letter to the victim. He's not allowed to. And the way it's administered, he can't even send it through the prosecutor. He can't send it. As I've been saying, I think maybe if you just forwarded his letter, maybe that would be contact, but you're not doing that. How does that influence our facial challenge here? I mean, the statute wouldn't prevent you from administering it that way, but you're not administering it that way. So you are, in fact, the way you're administering it, preventing speech, even if it's not major speech, speech, i.e., this letter I want to write. Yeah, I mean, for reasons we've already talked about, I'd obviously quibble with some of the premises there. I'm sorry? I think I would push back on some of the premises there about the letters and whether the letters are okay. I don't care what – now I'm not even talking about what's in your letter. The fact is that you're not allowing them to send their letter in any fashion. So, in effect, you have a statute that says somebody wants to talk to you. Before I give them – before I let them talk to you or give them the letter or let them talk to you directly, I need to let you know that you have the right to say no. So it prevents the letter from getting to them. They don't even know what's in the letter until they consent to the contact. Does that present a First Amendment problem? It doesn't. I mean, so let me set the conduct question aside for a second because I take it that the court is also interested in what to do with it. Yeah, well, we're trying to make – I'm trying to make this into a speech thing. So somebody is saying, I have something I want to say. It's in the letter. I want to send it to the victim. And under the Arizona law, before that letter gets to the victim, the victim must consent to being – to contact by the defense lawyer. He may or may not know what's in the letter. That's a separate issue. Nothing in the statute that prohibits the prosecutor from passing it on. But the victim has the absolute right, I think, under the statute to say, I don't want to see a letter from – I don't want any – I don't want any contact whatsoever. Fine. So what we're doing is saying there's a restraint here of some kind that prevents that speech. Why doesn't that come under the prior restraints sort of cases? So I think – let me start with the last piece of that and try to back up a little bit. On the prior restraint front, typically we think of prior restraints as being concerned about the censoring. That's prior restraints. No, it's not. I don't mean that it's a prior – but I mean it implicates – why does it implicate speech under those circumstances? It's a better question. Sure, sure. So let me assume for a second that we're talking about speech. Obviously, the fact that we're talking about speech doesn't end the analysis. We then have to figure out a number of other things. I think the first thing you have to figure out is what scrutiny to apply, and that's where I think Gentile is – You came in here and said there's no speech. It's conduct. So that's what we're trying to find out first. Okay? Certainly. Yeah. And I took no turn to be asking a question that sort of assumes that we're talking about speech here. And so I was only answering in that context. Obviously, our position – Well, why aren't we talking about speech here? If that's the case, that's what you're doing here. Or is the conduct sending – if the conduct is contacting any mechanism, whether through speech or otherwise, with the – that's what we're trying to figure out. Yeah, I mean, let me try to get at what I think is driving some of these questions, which is obviously there's a message that a defense attorney, at least in this hypothetical where they have a letter, wants to deliver and they're being prevented from delivering it. I can see how at first blush you think, well, maybe that's speech. But then I would encourage the court, look at Tingley, look at Pickup. The fact that it's a message that's being delivered doesn't end the analysis. There you have someone practicing their profession, and the way they practice it is by speaking words to the client. Does the statute prohibit – again, put aside the Girl Scout cookie thing. Defense lawyer wants to knock on the front door of the victim and size them up. Do they look like they're going to be a good witness in court? Do they look shifty? I don't want to say anything to them. I just want to knock on the front door of the victim and have them open the door. Does the statute prohibit that? I think it does. I think that is contact as the statute contemplates. So without regard to the method of contact, the statute prohibits it? Yes. If the method of contact is proposed speech, does that make a difference? I don't think it makes a difference. The proposed method of contact is speech. Yes, and I think this is part of my point here, which is that I don't think the statute cares whether the method of contact is a knock on the door or a letter or a phone call or a text message. What it cares about is that contact is made or not made, and the statute wants contact not to be made. Since you haven't really been able to tell us why that isn't a suppression of speech, if it is a suppression of speech, you say then we get to levels of scrutiny. So what do we get? Do we get to the Gentile list? I mean, because Gentile itself was about representation. I mean, the whole premise of it was that in making this external talk, he was representing his client. So you have a problem there, too, in terms of trying to back this out as a tingly situation, because they treated that as a First Amendment problem. Yes, I think the speech in Gentile is quite different in that you have to But it was clearly representational, and they said it was representational. Yeah, and I hope you're not taking me to say that anything that is representational is necessarily conduct. That's not the argument, and Gentile obviously would preclude that argument. There would be an extension of tingly as well, right? Those cases, where do we draw the line if not at the patient or client relationship? I think it's the fact that mere contact is prohibited by the statute. I mean, to get to what Judge Hurwitz was just asking about, there doesn't have to be any speech for the statute to be implicated, and this is, after all, a facial challenge. And so if it's the case It's silly and hypothetical because nobody's going to go knocking on the door just to look at somebody. They're going to say something. I take the point, but I think it helps demonstrate that it really is the mere contact that the statute is concerned with and not any speech that's going to follow. To get back to Gentile, there you have what is much more plainly in the realm of the First Amendment in that you have an attorney speaking to the media. And, you know, for obvious reasons, I think the court there concluded that we're talking about speech. But Gentile does provide a lower standard and says that that lower standard applies any time an attorney is representing a client's interest in ongoing legal proceedings. I don't think that has changed, and I don't think there's anything else, any other precondition for Gentile's application. So if we were to... The district court didn't apply Gentile here in the sense of a lowered standard. What should we do if we think that Gentile is the appropriate legal analysis? Should we do it ourselves or should we send it back to the district court and say, conduct... They say you gave no reason at all. I kind of think the statute on its face gives a reason, and the legislative history of the statute gives a reason, which is that there was some perceived history of victims being made unhappy by contacts. But what should we do? I think the court could do either. Undoubtedly, the court could issue an opinion that says Gentile applies. The district court applied the wrong rubric. Let's send it back to the district court and let them do this in the first instance. I'm not sure the court needs to do that on this particular set of facts, and let me try to say why, which is the district court already issued very detailed findings of fact and conclusions of law, about 50 pages of them. And frankly, looking at those findings and facts and conclusions of law, if the district court were to go back and apply Gentile, I think we have a pretty good idea how it's going to come out. And so, you know, usually when the court is sending something back to be evaluated under a new test, it's because something was left open by the district court in the first instance. I'm not sure much is left open here. I would say that 90% of the time that we send things back, we get the same answer a second time. And I would suggest that even if it might not be my client's preference, you would probably get the same answer this time. And so I think the court has what it needs in front of it to evaluate this question, although obviously it has the discretion to send it back. Thank you. Any other questions? Could I thank counsel? Yes, yes, we will all thank you. Their arguments and their patience. Excellent presentations and patience. A wonderful day of legal inquiry. Thank you. The case is submitted and we'll recess for the day.
judges: BERZON, HURWITZ, JOHNSTONE